**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

DONNA JOHNS and PAMELA JEAN FRICK,
on behalf of themselves and all others similarly
situated,

                            Plaintiffs,

v.

ALLURA USA LLC, PLYCEM USA LLC
D/B/A ALLURA, PLYCEM USA, INC.,
ELEMENTIA USA, INC., ELEMENTIA, S.A.B.
DE C.V.,

                            Defendants.

CASE NO.: 3:18-CV-00669-FDW-DCK

**FIRST AMENDED
CLASS ACTION COMPLAINT**
(JURY TRIAL DEMANDED)

Plaintiffs Donna Johns and Pamela Jean Frick, on behalf of themselves and others similarly situated ("Class Members"), by and through their undersigned counsel file this First Amended Class Action Complaint as to the above-captioned matter, and in support hereof states and avers as follows:

## NATURE OF ACTION

1.    This is a consumer class action against Defendants Plycem USA LLC d/b/a Allura, Plycem USA, Inc., Elementia USA, Inc. and Elementia, S.A.B. de C.V. (hereinafter referred to as "Defendants") on behalf of all persons and entities who own homes, residences or other structures physically located in North Carolina, on which Defendants' fiber cement exterior siding is or was installed.

2.    Defendants' Fiber Cement Siding is hereinafter referred to as "the Siding."

3.    As discussed herein, the Siding on Plaintiffs' and Class Member's homes suffers

from an inherent defect resulting in the Siding cracking, chipping, flaking, peeling or splitting.

4.     When properly manufactured and installed on homes, the Siding meets all applicable standards for weather resistance and performs adequately.

5.     However, as a result of the defect in the Siding, Plaintiffs' and Class Members' have incurred and will incur thousands of dollars in damages to replace the Siding as well as due to water and moisture intrusion issues since the Siding does not perform adequately.

## THE PARTIES

6.     Plaintiff Donna Johns is a citizen and resident of Union County residing at 2602 West Pines Court, Monroe, North Carolina 28112.

7.     Plaintiff's home has Defendants' Siding installed on it that is failing.

8.     In 2014, Plaintiff contracted for the construction of a home with the property address of 2062 White Pines Court.

9.     Plaintiff Pamela Jean Frick is a citizen and resident of Union Country, residing at 5107 Sand Trap Court, Monroe, North Carolina 28112.

10.     After noticing that the Siding was failing, Plaintiffs contacted the general contractor, SouthEnd Exteriors, Inc, who installed the Siding during construction, who made several visits to the site to investigate the Siding.

11.     Plaintiffs contacted TrueHomes, LLC regarding the cracking Siding who, upon information and belief, contacted Defendants.

12.     Defendants inspected Plaintiffs' homes on or about October 24, 2018, and have evaluated their homes as well as the Siding on numerous other homes in their neighborhood.

13.     Defendants and/or their representatives failed to adequately remedy the defects and damages and Plaintiffs and Class Members have not received an adequate remedy.

2

14.     Defendants were put on notice of defects and resultant damages in the Siding by other homeowners in North Carolina and other states across the country.

15.     Defendant Allura USA LLC is a subsidiary of Plycem USA LLC, and Plycem USA, Inc., with a principal place of business in the State of Texas, and at all times relevant herein, Allura USA LLC transacted and conducted business in North Carolina.

16.     Specifically, Allura USA LLC manufactured, warranted, advertised, and sold defective fiber cement siding that was installed on Plaintiffs' homes and those of hundreds and potentially thousands of Class Members in North Carolina and the United States.

17.     Defendant Plycem USA LLC d/b/a Allura was and is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business in the State of Texas, and all times relevant herein, Plycem USA LLC d/b/a Allura transacted and conducted business in North Carolina.

18.     Plycem USA LLC d/b/a Allura manufactured, warranted, advertised, and sold defective fiber cement siding that was installed on Plaintiffs' homes and those of hundreds if not thousands of Class Members in North Carolina and the United States.

19.     Defendant Plycem USA Inc. was a corporation organized and existing under the laws of the State of Georgia, with a principal place of business in the State of Texas and all times relevant herein, Plycem USA Inc. transacted and conducted business in North Carolina.

20.     Plycem USA Inc. manufactured, advertised, and sold defective fiber cement siding that was installed on Plaintiffs' homes and those of thousands of Class Members in North Carolina and the United States.

21.     Defendant Elementia USA, Inc., is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business in the State of Texas, and all

times relevant herein, Elementia USA, Inc. transacted and conducted business in North Carolina.

22.     Elementia USA, Inc.  manufactured, advertised, and sold defective fiber cement siding that was installed on Plaintiffs' homes and those of thousands of Class Members in North Carolina and the United States.

23.     Defendant Elementia, S.A.B. de C.V. was and is a corporation organized and existing under the laws of another country and at all times relevant herein, Elementia, S.A. de C.V. conducts and is engaged in business in the State of North Carolina.

24.     Elementia, S.A.B. de C.V. manufactured, advertised, and sold defective fiber cement siding that was installed on Plaintiffs' homes and those of thousands of Class Members in North Carolina and the United States.

25.     At all times relevant herein, Elementia, S.A.B de C.V., Elementia USA, Inc., Plycem USA LLC, Plycem USA Inc., jointly transacted and conducted business in North Carolina.

26.     The Defendants are the agents and/or alter egos of each other in the manufacture, marketing, and distribution of the Siding.

27.     At all times relevant herein, the Defendants were actual and/or de facto joint ventures in the design, development, manufacture, marketing, and sales of the fiber cement siding at issue.

## JURISIDICTION AND VENUE

28.     This Court has jurisdiction over the parties and subject matters hereto and that the allegations involve Siding that was marketed, sold, supplied and distributed in North Carolina by Defendants and their agents.

29.     Further, the subject matter jurisdiction over this action and personal jurisdiction

4

over the Defendants is conferred upon and vested in this Court under and by virtue of N.C.G.S. §§ 175.4, 7A-240 and 7A-243.

30.     Venue for this action is properly laid in this Court pursuant to and in accordance with N.C.G.S. §§ 1-76, 1-77, 1-79, 1-80 and 1-82.

## FACTUAL ALLEGATIONS

31.     Defendants hold themselves out to both the construction industry and the public at large as being providers of superior, quality, and durable products, including the fiber cement siding that is the subject of this litigation.

32.     At all times relevant herein, Defendants were engaged in the design, manufacturing, marketing, sale, supply and delivery of the fiber cement siding in the State of North Carolina.

33.     At all times relevant herein, Defendants designed, manufactured, marketed, sold, supplied and distributed the Siding.

34.     Upon information and belief, Defendants used fly ash instead of the more common grain and silica used by other manufacturers of fiber cement siding in the Siding.

35.     Fly ash is an industrial by-product of coal burning power plants and costs less than cement, so its use by Defendants lowered the cost of concrete utilized in the manufacture of the Siding.

36.     However, Defendant design to use fly ash in design and/or formulation resulted in water absorption, porosity problems, and other uniform defects alleged herein none of which were inherent in the grain and silica sand design formulations.

37.     Upon information and belief, Defendants learned that the addition of fly ash into its Siding caused water absorption and porosity problems.

5

38.     As the Siding goes through repeated freeze-thaw cycles, it experiences increased expansion and contraction as a result of excess moisture in the product.

39.     Excessive expansion and contraction of the Siding leads to the uniform defects which are alleged herein.

40.     Defendants market and represent the Siding as durable, and as offering long-lasting protection for a specified life of 50 years.

41.     Defendants also represents to the public that its Siding would last for 50 years without problems, or, if it does not last 50 years, then Defendants would remedy the situation.

42.     At all times material hereto, Defendants marketed and represented the Siding that:

43.     "Combining the appearance and workability of wood with the durability of specially formulated fiber cement, Allura Lap Siding not only looks great but lasts considerably longer than traditional exterior wall cladding or vinyl siding."

44.     "Unlike wood, vinyl and other traditional building materials, Allura Fiber Cement products resist damage from hail or termite attacks, resist rot, are non-combustible, and free from manufacturing defects. They are also suitable in both hot and cold climates and are fire resistant. What's more, Allura products feature realistic wood grain and textures, come in an incredible array of colors and are paintable for unlimited design possibilities."

45.     "When it comes to the natural look you want with none of the hassles, Allura Fiber Cement products are all you need. • Durable, engineered to endure harsh weather & high wind climates • Non-combustible, Class A fire rating • Superior aesthetics • Factory Pre-Primed • Distinctive, more realistic textures…Best ROI for homeowners* for 8 years in a row."

46.     "It won't rot, warp or splinter and is designed to significantly outperform wood in

6

every way."

47.    Plaintiffs' builder or subcontractor as well as Class Member's builders and subcontractors relied on Defendants' representations and purchased the Siding and installed it on Plaintiffs' homes during construction.

48.    As discussed herein, the Siding has not lived up to Defendants' representations and, given the early and severe deterioration that the Siding requires unexpected maintenance and premature repair and replacement.

49.    The Siding prematurely fails, causing damage to the underlying structures and other property of Plaintiffs and members of the Class and lowers the value of the property.

50.    All of Defendants' Siding is uniformly defective such that Plaintiffs and Class members' Siding is failing before the time periods advertised, marketed, and guaranteed by Defendants or otherwise expected by ordinary consumers purchasing siding.

51.    Specifically, Plaintiffs' and Class Members' Siding is cracking, splitting, warping as well as falling off Plaintiffs' and Class Member's homes.

52.    The defects present in the Siding are so severe that Plaintiffs and Class Members must repair or replace their siding sooner than reasonably expected by ordinary consumers who purchase siding generally and by consumers who purchased the Siding.

53.    As a result of the defects and failures alleged herein, Plaintiffs and the Class have suffered actual damages.

54.    The water intrusion and above-described damages resulting from the Siding constitutes "occurrences" resulting in "property damage" to property other than Defendants' "product" as those are terms commonly defined and used in the typical commercial general liability insurance policy.

7

55.     The above-described defects are due to fundamental design, engineering and manufacturing errors, which should have been within Defendants' expertise.

56.     Because the Siding cracks, prematurely degrades, otherwise fails and permits water intrusion, it violates the building codes and industry standards.

57.     The above-described deficiencies exist at the time the Siding leaves the factory.

58.     Failure of the Siding begins upon installation and continues during repeated and prolonged exposure to weather and ordinary use.

59.     The Siding on their homes has and will continue to fail prematurely compared to the time expected by ordinary consumers, the time marketed by Defendants, and the time represented by Defendants resulting in and requiring them to expend thousands of dollars to repair the damage associated with the Siding, and to prevent such damage from continuing into their homes and to prevent water intrusion into their home due to defects in the siding.

60.     Defendants knew or reasonably should have known the Siding is defective as designed and manufactured such that the product fails prematurely due to moisture invasion or other defects.

61.     The outward manifestation of the Siding deterioration and deformation is cracking, warping, discoloration, and product shrinkage.

62.     At the extreme, the Siding breaks and falls off the structure.

63.     In short, the Siding does not perform in accordance with the reasonable expectations of consumers and is not a suitable building product to be installed on houses or buildings.

64.     Upon information and belief, Defendants have received thousands of complaints alleging a manufacturing or design defect in the Siding.

8

65.     Upon information and belief, some of these warranty claims have been improperly rejected by Plycem USA, LLC d/b/a Allura as being due to installation errors.

66.     Despite receiving a litany of complaints from consumers, such as Plaintiffs and other members of the Class, Defendants have refused to convey effective notice to consumers about the defects, and refused to fully repair damage caused by the premature failure of its product.

67.     Defendants' response to customers' complaints and other requests for assistance and compensation is woefully inadequate under these circumstances in that it limits Plaintiffs' and Class members' recovery to replacement costs of individual boards of Siding piece by piece and excludes the full costs of labor to replace the Siding.

68.     Defendants' uniform representations to Plaintiffs and the Class that the Siding defects did not represent a design or manufacturing defect or that the problems were caused by improper installation constitute affirmative misrepresentations of material fact in light of the known defects inherent in the Siding purchased by Plaintiffs and the Class.

69.     Such representations serve to conceal the true nature of Defendants' defective Siding.

70.     At all relevant times, Defendants had a duty to disclose to Plaintiffs and Class Members that the Siding was defective, prone to foreseeable and uniform problems, such as the problems described herein, and otherwise was inherently flawed in its design such that the Siding was not suitable for use as an exterior building material.

71.     Because the defects in the Siding are latent and not detectable at the time of purchase until manifestation, Plaintiffs and the Class members were not reasonably able to discover their Siding was defective, despite the exercise of due diligence.

9

72.     The relatively small size of the typical individual Class member's claims, and because most homeowners and/or property owners have only modest resources, makes it unlikely that individual Class members could afford to seek a full and fair recovery against Defendants on their own.

73.     This is especially true in light of the size and resources of Defendants, and a class action is, therefore, the only reasonable means by which Class members can obtain relief from these Defendants.

74.     Plaintiffs seek to recover, for themselves and for the Class, the costs of repairing the damage to their property and replacing their Siding, and injunctive relief requiring Defendants to replace the Siding on Plaintiffs and Class Members' homes.

## PLAINTIFFS' EXPERIENCES

75.     In 2015, Plaintiff Johns' home was constructed, and the Siding was installed on the home.

76.     In 2016, Plaintiff Frick's home was constructed, and the Siding was installed on the home.

77.     In the spring and summer of 2018, Plaintiffs' and their neighbors began noticing that the Siding on the homes were cracking and breaking.

78.     In March of 2018, Plaintiff Johns contacted the general contractor's warranty department, notifying them of the extensive cracking of her Siding.  The representatives initially dismissed Plaintiff's claims due to expiration of the builders' warranty.

79.     In May of 2018, Plaintiff Johns had her Siding inspected, which revealed extensive cracking throughout the Siding on her home.  She received an estimate to replace her Siding totaling more than $6,000.

10

80. In June of 2018, Plaintiff Johns again notified the general contractor of the problems with her Siding. In its initial response, the general contractor responded, indicated that Plaintiff Johns' 1-year builders' warranty had expired, but that its Customer Service Department would reach out.

81. Subsequently, in June of 2018, the general contractor and the siding installer visited the property. At that time, a representative of the siding installer took photographs and notes, and stated that Plaintiff Johns and her neighbors would hear from them as soon as possible. Neither the general contractor nor the siding installer ever contacted Plaintiff Johns or her neighbors regarding these issues.

82. Consequently, in July of 2018, Plaintiffs filed complaints with the North Carolina Department of Justice, Consumer Division.

83. In August of 2018, the general contractor responded to Plaintiff Johns' consumer complaint, and confirmed that the Siding product was Allura Fiber Cement Siding warranted to be free of defects for 50-years. The correspondence further stated that the general contractor put "Allura Warranty," also known as the "Allura Warranty Claim Deparment," on notice of the complaints and provided Defendants with all necessary information to begin a warranty claim.

84. As a result of the various forms of notice, Allura Warranty Claim Department sent representatives to inspect several homes in Plaintiffs' neighborhood, including Plaintiffs' homes on October 24, 2018, and have evaluated the homes' Siding.

85. Following the inspection, the "Allura Warranty Claim Department" sent a copy of the "allura™" warranty and the "allura Warranty Claims Form" to Plaintiffs and their neighbors. The Allura Warranty Claims representative demanded Plaintiffs and many other class members sign Warranty Claim agreements during the same week as the inspections took place.

11

86. Allura Claim Department representatives threatened that Plaintiffs had only one opportunity for repair under the Warranty, and that they would "leave the property and never return" if Plaintiffs did not immediately sign the allura Warranty Claims agreement.

87. Plaintiff Johns refused to sign the Warranty Claims Form supplied by Defendants on October 24, 2018.

88. Plaintiff Frick did sign the "allura Warranty Claims Form." In response, Allura communicated to her that an independent third party would perform an inspection. Three of the four inspectors who showed up without notice identified themselves as "Allura" employees. During the inspection, the inspectors loosened an already damaged board in attempt to insert a scope to locate the Allura name on the board. Allura's Warranty representatives left inadequate repairs at Plaintiff Frick's home, and otherwise left the defective Siding on the home. Allura Warranty representatives refused to respond to Plaintiff Frick's inquiry as to what effect any repair would have to the remainder of her Siding Warranty.

89. Allura Warranty representatives' response to Plaintiffs was insufficient under the terms of the warranty and under the laws of North Carolina because, *inter alia*, (1) Allura Warranty abandoned its warranty obligations to Defendant Johns because she would not sign a Claim in a time shorter than required by the Warranty, while under duress and without the opportunity to review and have independent counsel review; (2) Allura Warranty failed and refused to repair all of the Siding on the homes; and (3) Allura Warranty's repair will leave mismatching siding, both structurally and aesthetically.

90. Plaintiffs continue to experience severe cracking and deterioration of the Siding and the terms of the Warranty were not satisfied by the Allura Warranty Claims Department.

91. As a result, Plaintiffs had no other alternative than to file suit.

12

## ESTOPPEL FROM PLEADING THE STATUTE OF LIMITATIONS OR STATUTE OF REPOSE

92.     Defendants knew or reasonably should have known the Siding was defective prior to the time of sale, and intentionally concealed that material information and the truth concerning their product from Plaintiffs, Class members and the general public, while continually marketing the Siding as dependable products and installing it on Plaintiffs' and Class Members' homes.

93.      Defendants' acts of concealment include failing to disclose that the Siding was defectively manufactured and would deteriorate in less than its expected lifetime, leading to damage to the very structures they were purchased to protect.

94.     Plaintiffs did not discover that the Siding suffers from an inherent defect until shortly before filing this Complaint and after reviewing complaints which had been filed in other jurisdictions.

95.     Regardless, all conditions precedent to the prosecution of this action have been satisfied including, without limitation, that this action has been filed less than six (6) years from the date of substantial completion of each home, and/or from the last act of the Defendants, and this suit has been instituted within three years from the date the defect or damage became apparent to Plaintiffs.

96.     Indeed, Plaintiffs and Class Members have adequately put Defendant Plycem USA LLC d/b/a Allura. on notice regarding the defects in the Siding to comply with their breach of contract and all Defendants as to their breach of implied warranties claims.

## ESTOPPEL FROM PLEADING WARRANTY LIMITATIONS AND DISCLAIMERS

97.     Defendants are also estopped from relying on any warranty limitation or disclaimer as a defense to Plaintiffs' and Class Members' claims.

13

98.     By virtue of Defendants' acts, the Siding installed in Plaintiffs' and Class Members' residences has not lived up to Defendant Plycem USA LLC d/b/a Allura express warranties, nor Defendants' implied warranties, and representations, and given the defective condition of the Siding and the premature deterioration the Siding that requires unexpected maintenance, wear and/or replacement, the Siding has not proven to be of the value bargained for and/or of that compared to other siding.

99.     Defendants knew or should have known that their Siding was defective in design and/or manufacture, and said Siding was not fit for their ordinary and intended use, was not merchantable, and failed to perform in accordance with the advertisements, marketing materials and representations disseminated by Defendants or with the reasonable expectations of ordinary consumers such as Plaintiffs and Class Members.

100.    Accordingly, any express warranty provided by Defendant Plycem USA LLC d/b/a Allura and Defendants' fails of its essential purpose because its purports to warrant that the Siding will be free from defects for a prescribed period of time when in fact said Siding falls far short of the applicable warranty period.

101.    Moreover, Defendant Plycem USA LLC d/b/a Allura's express warranty, and Defendants' implied warranties are woefully inadequate to repair and replace failed Siding, let alone reimburse for any damage suffered to the underlying structure due to the inadequate protection provided by the product.

102.    The remedies available under Defendant Plycem USA LLC d/b/a Allura express warranty and Defendants' implied warranties are limited to such an extent that they do not provide a minimum adequate remedy.

103.    As a result, any time limitations, exclusions, or disclaimers which restrict the

14

remedies encompassed within Defendant Plycem USA LLC d/b/a Allura's express warranty are unconscionable and unenforceable, and therefore, Defendants are estopped from relying on the same.

104.     Defendants' shipping of the Siding with actual or constructive knowledge of the defects, or with negligent or reckless disregard of the presence of defects constituted a breach of their express warranty, and makes the limitations of Defendant Plycem USA LLC d/b/a Allura's express warranty unconscionable in all respects, and therefore void *ab initio.*

105.     Defendant Plycem USA LLC d/b/a Allura's published written warranties include the following limitations and exclusions:

(a)  The warranty excludes the costs or expenses for labor or accessory materials.

(b)  The warranty requires that homeowners, at their own expense, provide protection of all property that could be affected until the claimed defect is remedied;

(c)  The warranty disclaims all liability for any incidental, consequential, or special damages of any type, including limitation of any and all claims pertaining to property damage, breach of warranty, breach of contract, tort, or any other legal claim or theory.

(d)  The warranty also disclaims any warranties except the limited warranty of the Warranty.

(e)  The warranty states a Claimant Questionaire must be completed, signed and returned to Defendants (along with photographic evidence requested in the Claimant Questionaire) within sixty (60) after the date on which Defendants provided the Claimant Questionaire to the Claimant; However, Defendants required Plaintiffs  to return the information requested with the Claimant Questionaire in less than fifteen (15) days.

(f)  The warranty purports to allow Defendants to inconsistently apply the warranty at their own discretion; and

(g)  In other such ways revealed during discovery, and/or otherwise determined at trial.

106.     The warranty is not a negotiated contract and is so one-sided that no reasonable

15

person would ever knowingly agree to its terms if properly disclosed.

107.     Further, Defendant Plycem USA LLC d/b/a Allura has failed to honor warranty claims by failing to respond to the homeowner and removing Siding from homes with no replacements, leaving areas of the homes exposed to additional damage.

## <u>CLASS ACTION ALLEGATIONS</u>

108.     Plaintiffs bring this class action pursuant to N.C. Gen. Stat. § 1A-1, Rule 23 on behalf of themselves and a Class defined as follows:

109.     The Class is defined as follows:

> All persons and entities that own structures within the State of North Carolina in which Defendants' Siding is installed.

> This class excludes:

> (a) any Judge or Magistrate presiding over this action and members of their families;

> (b) any employees of Defendants;

> (c) any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants' and its legal representatives, assigns, and successors;

> (d) any person who has released Defendants or us currently in litigation with Defendants related to Defendants' Siding; and

> (e) all persons who properly execute and file a timely request for exclusion from the Class.

> Plaintiffs  proposes that the Class be divided into subclasses if and as necessary to align class interests.

110.     *Numerosity:*  Members of the Class are so numerous that their individual joinder is impracticable. While the precise number is unknown at this time, upon information and belief, the proposed Class is comprised of a least hundreds of members dispersed throughout the state of North Carolina the joinder of whom in one action is impractical.

16

111. Moreover, upon information and belief, the Class is ascertainable and identifiable from Defendants' records and through looking at the Siding.

112. *Commonality:* The critical question of law and fact common to the Class that will materially advance the litigation is whether the Siding is inherently defective, contrary to the expectations imparted by Defendants through their marketing, representations and omissions.

113. Furthermore, other questions of law and fact common to the Class that exist as to all members of the Class and predominate over any questions affecting only individual members of the Class include the following:

(a) Whether the Siding is defective;

(b) Whether the Siding is subject to cracking and is not suitable for use as an exterior siding product for the duration of time advertised, marketed, and warranted;

(c) Whether the siding will continue to crack and degrade over time;

(d) Whether Defendants were negligent in their design and manufacture of the Siding;

(e) Whether Defendants knew or should have known about the defective condition of the Siding;

(f) Whether Defendants concealed and/or failed to disclose the defective condition of the Siding to consumers;

(g) Whether Defendants breached their implied warranties;

(h) Whether the Plaintiffs' are entitled to prejudgment interest, attorneys' fees, and costs from Defendants;

(i) Whether Defendants' conduct was negligent, reckless, willful, wanton, intentional, fraudulent or the like, entitling Plaintiffs to statutory or punitive damages from Defendants;

(j) Whether Defendants' conduct, acts and omissions constitute a breach of contract, violation of the building code, negligence, negligence *per se*, negligent misrepresentations and/or violation of the North Carolina Unfair and Deceptive Trade Practices Act;

17

(k) Whether the Siding failed to perform in accordance with the reasonable expectations of ordinary consumers;

(l) Whether Defendants' conduct in marketing and selling its Siding involved misrepresentations, intentional omissions, or was otherwise unfair and deceptive; and

(m) Whether Plaintiffs and the Class are entitled to compensatory damages and the amount of damages for the removal and replacement of the defective Siding.

114.    *Typicality:* Plaintiffs' claims are typical of the claims of the members of the Class, as all such claims arise out of Defendants' conduct in designing, manufacturing, marketing, advertising, and selling the defective Siding and Defendants' conduct in concealing the defects in the Siding to owners, contractors, developers, and suppliers.

115.    Furthermore, the factual bases of Defendants' conduct is common to all Class members and represents a common thread of deliberate, fraudulent, and negligent misconduct resulting in injury to all members of the Class.

116.    *Adequate Representation:* Plaintiffs will fairly and adequately protect the interests of the Class members and have no interests antagonistic to those of the Class.

117.    Plaintiffs' have retained counsel experienced in the prosecution of complex class actions and construction defect cases.

118.    *Predominance and Superiority:* This class action is appropriate for certification because questions of law and fact common to the Class members predominate over questions affecting only individual members, and a Class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable.

119.    Should individual Class Members be required to bring separate actions, this Court and Courts throughout North Carolina would be confronted with a multiplicity of lawsuits

18

burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments.

120.    Moreover, Plaintiffs envision no unusual difficulty in the management of this action as a class action and absent a class action, the vast majority of Class Members likely would not be in a position to litigate their claims individually and would have no effective remedy at law through which to vindicate their claims against Defendants and be made whole.

121.    The above-described defective conditions of the Siding and resultant damages are present in Plaintiffs' homes and are common among Class Members.

122.    As a direct and proximate result of purchasing and installing Defendants' Siding, Plaintiffs and the Class Members have suffered damages, in that the Siding on their homes and other structures has and will continue to fail prematurely, resulting in damage to the Siding and underlying structures and requiring them to expend thousands of dollars to repair the damage associated with the incorporation of the Siding into their homes and other structures, or to prevent such damage from occurring.

## FIRST CAUSE OF ACTION
### (Breach of Express Warranty As To Defendant Plycem USA LLC d/b/a Allura)

123.    Plaintiffs reallege and incorporates by reference paragraphs 1-122 of their Complaint as if fully set forth herein.

124.    Defendant marketed and sold its Siding into the stream of commerce with the intent that the Siding would be purchased by Plaintiffs' and Class Members' contractors or subcontractors or related entities and installed on Plaintiffs'' and Class Members' homes.

125.    Defendant expressly warranted that its Siding is well-suited as an outdoor siding material for a period of at least 50 years.

126.    Defendant's representatives through its written warranties regarding the

19

durability and quality of the Siding created express warranties.

127.  Express warranties created by Defendant goes beyond the limited warranties Defendants' rely upon.

128.  Defendant also created express warranties by the Siding's brochures and marketing materials.

129.  Defendant expressly warranted that the structural integrity of the Siding installed on Plaintiffs and Class members' homes would last at least 50 years.

130.  After Plaintiffs were made aware of the defects in the Siding, notice was duly given to Defendant.

131.  Defendant has represented that the defects in the Siding were not warrantable but were a result of faulty installation.

132.  Defendant breached its express warranties to Plaintiffs and the Class in that the Siding did not, and does not, maintain its structural integrity and perform as promised.

133.  The Siding cracks, splits, warps, discolors, falls off the structure, deteriorates prematurely, and otherwise does not perform as warranted by Defendant.

134.  Defendant's warranties fail their essential purpose because they purport to warrant that the Siding will be free from structural breakdown for at least 50 years when, in fact, the Siding falls far short of the applicable warranty period.

135.  Defendant's warranties also fail their essential purpose because any replacement of the current defective product would also be defective.

136.  Moreover, because the warranties limit Plaintiff's and Class members' recovery to replacement of the Siding piece by piece, with replacement labor not included, Defendant's warranty is woefully inadequate to repair and replace failed siding, let alone any damage

20

suffered to the underlying structure due to the inadequate protection provided by the product.

137.    The remedies available in Defendant's warranties are limited to such an extent that they do not provide a minimum adequate remedy.

138.    The limitations on remedies and the exclusions in Defendant's warranties are unconscionable and unenforceable.

139.    Defendant has denied or failed to pay in full the warranty claims or has not responded to warranty claims, and Defendant has claimed that the Siding is defective due to defective installation.

140.    Defendant's response to Plaintiffs and Class Members is insufficient under the terms of the warranty and under the laws of North Carolina because, *inter alia*, (1) Defendant abandoned its warranty obligations to homeowners when they refuse to sign a Claim under duress and without the opportunity to review and have independent counsel review; (2) Defendant has failed and refused to repair all of the Siding on the homes; and (3) Defendant's repair will leave mismatching siding, both structurally and aesthetically; and (4) in other ways to be determined through discovery and at trial.

141.    As a result of Defendant's breach of its express warranties, Plaintiffs and the Class have suffered actual damages because their homes contain the Siding that is defective and that has failed or is failing prematurely due to moisture penetration and porosity problems.

142.    This failure has required or is requiring Plaintiffs and the Class to incur significant expense in repairing or replacing the Siding.

143.    Replacement is required to prevent on-going and future damage to the underlying structures or interiors of Plaintiffs' and Class members' homes.

144.    Plaintiffs and the Class have incurred damages in an amount in excess of $25,000,

said amount to be proven at the trial of this action.

## SECOND CAUSE OF ACTION
### (Breach of Implied Warranties)

145.    Plaintiffs reallege and incorporates by reference paragraphs 1-144 of their Complaint as if fully set forth herein.

146.    At all times mentioned herein, Defendants manufactured or supplied the Siding, and prior to the time the Siding was purchased by Plaintiffs' and Class Members' contractors or one of its entities or subcontractors, Defendants impliedly warranted to the builders, subcontractors, Plaintiffs, Class Members and the general public that the Siding was of merchantable quality and fit for the use for which it was intended.

147.    However, as described herein, the Siding was unfit for its intended use and it was not of merchantable quality, as warranted, in that it had propensities to break down and fail to perform and protect when put to its normal intended use.

148.    The Siding caused Plaintiffs and Class members to sustain damages as herein alleged.

149.    The Siding was similarly unfit for its particular purpose to be used on Plaintiffs' and Class Members' homes.

150.    Defendants failed to provide adequate remedy and added additional terms to the warranties which independently cause the purported warranty to fail its essential purpose, thereby permitting remedy under implied warranties.

151.    In addition, any attempts to waive or disclaim these warranties were not conspicuous and were otherwise unenforceable.

152.    Defendants have also claimed all of the defects are the result of installation deficiencies.

22

153.     As a direct and proximate result of the breach of said warranties, Plaintiffs and the Class members suffered and will continue to suffer loss as alleged herein in an amount to be determined at trial.

154.     Plaintiffs and the Class have incurred damages in an amount in excess of $25,000, said amount to be proven at the trial of this action.

### THIRD CAUSE OF ACTION
### Negligent Misrepresentation

155.      Plaintiffs reallege and incorporates by reference paragraphs 1-154 of their Complaint as if fully set forth herein.

156.     Defendants, through their marketing. materials, website, brochures, product literature, warranties and agents, made representations to the Plaintiffs and Class Members, builders, suppliers and the public about the superior quality and durability of their Siding and components.

157.     Defendants transmitted said representations to the Plaintiffs and Class Members, builders, suppliers and the public while failing to disclose the defective condition of their Siding, including the substantial leakage and consequential damages that would or could likely result from their Siding' defects.

158.     Defendants have a pecuniary interest in making these representations and non-disclosures and had a duty to communicate truthful information to the Plaintiffs and Class Members, builders, suppliers and the public.

159.     Defendants breached their duties by failing to exercise due care in making the above-described representations and non-disclosures and the Plaintiffs and Class Members, builders, suppliers and the public relied on these representations and non-disclosures.

160.     The Plaintiffs and Class Members have suffered a pecuniary loss as a direct and

23

proximate result of their reliance upon these representations and non-disclosures.

## FOURTH CAUSE OF ACTION
### (Negligence)

161.    Plaintiffs reallege and incorporates by reference paragraphs 1-160 of their Complaint as if fully set forth herein.

162.    Defendants had a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, and marketing of the Siding.

163.    Defendants breached their duty to Plaintiffs and the Class by designing, manufacturing, advertising and selling a product that is defective and will fail prematurely, and by failing to promptly remove the Siding from the marketplace or to take other appropriate remedial action.

164.    Defendants knew or should have known that the Siding was defective, would fail prematurely, was not suitable for use as an exterior siding product, and otherwise was not as warranted and represented by Defendants.

165.    As a direct and proximate cause of Defendants' negligence, Plaintiffs and the Class have suffered actual damages in that the Siding was purchased by an agent of Plaintiffs or the Class Members and installed on Plaintiffs' and Class Members' homes.

166.    Upon information and belief, the defect in the Siding causes damage to Plaintiffs' and Class members' existing homes in addition to damage to the siding itself, by allowing moisture to enter through the Siding.

167.    These failures have caused and will continue to cause Plaintiffs and the Class Members to incur expenses repairing or replacing their siding as well as the resultant progressive property damage.

168.    Plaintiffs and the Class have incurred damages in an amount in excess of $25,000,

said amount to be proven at the trial of this action.

## FIFTH CAUSE OF ACTION
### (Violation of Unfair Trade Practices and Consumer Protection Laws)

169.    Plaintiffs reallege and incorporates by reference paragraphs 1-168 of their Complaint as if fully set forth herein.

170.    N.C. Gen. Stat. § 75-1.1 makes unlawful, "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce."

171.    By selling the Siding throughout the State of North Carolina and making representations regarding its product, Defendants have affected commerce and trade within the State. CertainTeed engaged in unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1 when, in selling and advertising the Siding, Defendants failed to give Plaintiffs and members of the Class adequate warnings and notices regarding the defect in the Siding despite the fact that they knew or should have known of the defects described herein.

172.    Thus, Defendants knew of the defective nature of the Siding yet continued to sell and distribute the Siding.

173.    Defendants' acts and omissions possessed the tendency or capacity to mislead or create the likelihood of deception.

174.    Defendants knew or should have known that its Siding was defective, would fail prematurely, was not suitable for use as an exterior Siding product, and otherwise was not as warranted and represented by Defendants.

175.    Defendants' conduct and omissions described herein repeatedly occurred in their trade or business and were capable of deceiving a substantial portion of the consuming public.

176.    Defendants' misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive and cause misunderstanding and/or in fact caused Plaintiffs and

25

other members of the Class to be deceived about the suitability of the Siding for use as a long-lasting exterior borne building product that would be backed by warranties of up to 50 years, and those warranties would in fact be honored by Defendants.

177. Defendants intended that Plaintiff, Class members and or their agents and subcontractors and contractors would rely on their misrepresentations, concealment, warranties, deceptions, and/or omissions regarding the suitability, durability, and useful life of its defective Siding.

178. The facts concealed or not disclosed by Defendants are material facts in that Plaintiffs and any reasonable consumer would have considered those facts important in deciding whether to purchase the Siding or purchase homes or structures constructed with the Siding.

179. Had Plaintiffs and the Class known the Siding was defective and would fail prematurely they would not have purchased the Siding or they would have either negotiated additional warranty coverage, negotiated a lower price to reflect the risk, or simply avoided the risk altogether by purchasing different siding.

180. Defendants unlawful conduct is continuing, with no indication that it will cease.

181. As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiffs and the members of the Classes have been damaged in an amount in excess of $25,000 and are entitled pursuant to N.C. Gen. Stat. § 75-16 to recover treble damages as well as attorneys' fees and costs.

WHEREFORE, Plaintiffs pray that this Court will certify a class and for judgment against Defendants, for:

1. For an order certifying the Class, pursuant to N.C. Gen. Stat. § 1A-1, Rule 23, appointing Plaintiffs as representative of the Class, and appointing the law firms representing Plaintiffs as counsel for the Class;

26

2. Declare that Defendants are financially responsible for notifying all Class members of the problems with the Siding;

3. Enter an award of attorneys' fees and costs, as allowed by statute and law;

4. Enter an award of pre-judgment and post-judgment interest, as provided by statute and law;

5. Enter an award for compensatory damages sustained by Plaintiffs and Class;

6. Enter an order for equitable and/or injunctive relief;

7. Enter and order for payment of costs of suit herein incurred;

8. Enter an award of treble damages for its unfair and deceptive trade practices as provided in N.C.Gen.Stat. § 75-16;

9. Grant Plaintiffs and the Class leave to amend the Complaint to conform to the evidence produced at trial; and

10. Grant such other or further relief as may be appropriate under the circumstances.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims so triable.

This 1st day of February 2019.

WHITFIELD BRYSON & MASON LLP

*/s/ Scott C. Harris*
Daniel K. Bryson
N.C. State Bar No. 15781
Scott C. Harris
N.C. State Bar No. 35328
Harper T. Segui*

27

900 W Morgan St
Raleigh, NC  27603
Phone: (919) 600-5000
Fax: (919) 600-5035
scott@wbmllp.com
dan@wbmllp.com
harper@wbmllp.com

*To be admitted pro hac vice*

*Counsel for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of February, 2019, a copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the counsel of record.

WHITFIELD BRYSON & MASON LLP

*/s/ Scott C. Harris*
Scott C. Harris
N.C. State Bar No. 35328
900 W. Morgan Street
Raleigh, North Carolina 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
scott@wbmllp.com